## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BABULAL TARAPARA, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NIO INC., BIN LI, LOUIS T. HSIEH, LIHONG QIN, PADMASREE WARRIOR, TIAN CHENG, XIANG LI, HAI WU, YAQIN ZHANG, XIANPING ZHONG, ZHAOHUI LI, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and WR SECURITIES, LLC,<br><br>　　　　　　　　　　Defendants. | Case No. 1:19-cv-02777<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Babulal Tarapara ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by NIO Inc. ("NIO" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by NIO; and (c) review of other publicly available information concerning NIO.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired NIO securities pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's September 2018 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. NIO purports to design, jointly manufacture, and sell electric vehicles. The Company also connects users through a mobile application for certain support services.

3. On September 12, 2018, the Company filed with the SEC its IPO prospectus, which forms part of the Registration Statement. In the IPO, the Company sold 183 million ADSs at a price of $6.26 per share. Each ADS represents one share of common stock. The Company received proceeds of approximately $1.15 billion from the IPO net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for research and development of products; selling and marketing and development of sales channels; development of manufacturing facilities and roll-out of its supply chain; and general corporate purposes and working capital. Notably, approximately $238.7 million was to be used for the development of its Shanghai manufacturing facility.

4. On March 5, 2019, after the market closed, the Company announced that it would

no longer build its own manufacturing plant and would instead rely on state-owned manufacturer, JAC Auto. The Company also reported that electric vehicle deliveries fell due to anticipated subsidy reductions in China in 2019.

5. On this news, the Company's share price fell $3.07, or over 30%, over the next two trading days to close at $7.09 per share on March 7, 2019, on unusually heavy trading volume.

6. On April 2, 2019, the Company disclosed that, although its mobile application had over 760,000 registered users, only 190,000 were daily active users on peak days in 2018.

7. On May 9, 2019, the Company's share price closed at $4.60 per share, which was a decline of $1.66, or approximately 27%, from the IPO price of $6.26.

8. The Registration Statements were false and misleading and omitted to state material adverse facts. Specifically, Defendants failed to disclose to investors: (1) that the Company would not build its own manufacturing plant; (2) that, instead, the Company would rely on JAC Auto, a manufacturer owned by the Chinese government; (3) that reductions in government subsidies for electric cars would materially impact the Company's sales; (4) that the number of registered users of the Company's mobile application did not reflect the active user base; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

12. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company has offices in this district.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14. Plaintiff Babulal Tarapara, as set forth in the accompanying certification, incorporated by reference herein, purchased NIO securities during the Class Period and/or pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15. Defendant NIO is incorporated under the laws of the Cayman Islands with its principal executive offices located in Shanghai, China. NIO's American Depositary Shares ("ADSs") trades on the New York Stock Exchange ("NYSE") under the symbol "NIO."

16. Defendant Bin Li ("Li") was, at all relevant times, the Chief Executive Officer and Chairman of the Board of Directors of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Louis T. Hsieh ("Hsieh") was, at all relevant times, the Chief Financial Officer of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18. Defendant Lihong Qin ("Qin") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Padmasree Warrior ("Warrior") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Tian Cheng ("Cheng") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Xiang Li ("Xiang Li") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Hai Wu ("Wu") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendant Yaqin Zhang ("Zhang") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24. Defendant Xianping Zhong ("Zhong") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25. Defendant Zhaohui Li ("Zhaohui Li") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26. Defendants Li, Hsieh, Qin, Warrior, Cheng, Xiang Li, Wu, Zhang, Zhong, and Zhaohui Li are collectively referred to hereinafter as the "Securities Act Individual Defendants."

27. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO.

28. Defendant Goldman Sachs (Asia) L.L.C. ("Goldman Sachs") served as an underwriter for the Company's IPO.

29. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") served as an underwriter for the Company's IPO.

30. Defendant Deutsche Bank Securities Inc. ("Deutsche") served as an underwriter for the Company's IPO.

31. Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

32. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") served as an underwriter for the Company's IPO.

33. Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

34. Defendant WR Securities, LLC ("WR") served as an underwriter for the

Company's IPO.

35.     Defendants Morgan Stanley, Goldman Sachs, Merrill Lynch, Deutsche, Citigroup, Credit Suisse, UBS, and WR are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired NIO securities pursuant and/or traceable to the Company's false and/or misleading Registration Statement and Prospectus issued in connection with the Company's IPO (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NIO's ADSs actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of NIO ADSs were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by NIO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of NIO; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

42. NIO purports to design, jointly manufacture, and sell electric vehicles. The Company also connects users through a mobile application for certain support services.

### The Company's False and/or Misleading Registration Statement and Prospectus

43. On August 13, 2018, NIO registered its common stock on Form F-1 with the SEC, which forms part of the Registration Statement.

44. On August 28, 2018, NIO registered its ADSs on Form F-6 with the SEC, which forms part of the Registration Statement.

45. On September 11, 2018, NIO filed its final amendment to the Registration Statement with the SEC on Form F-1/A. The Registration Statement was declared effective on the same day.

46. On September 12, 2018, the Company filed with the SEC its IPO prospectus, which forms part of the Registration Statement.  In the IPO, the Company sold 183 million ADSs at a price of $6.26 per share. Each ADS represents one share of common stock. The Company received proceeds of approximately $1.15 billion from the IPO net of underwriting discounts and commissions.  The proceeds from the IPO were purportedly to be used for research and development of products; selling and marketing and development of sales channels; development of manufacturing facilities and roll-out of its supply chain; and general corporate purposes and working capital. Notably, approximately $238.7 million was to be used for the development of its Shanghai manufacturing facility.

47. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

48. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

49. The Registration Statement stated that the Company is "developing [its] own manufacturing facility in Shanghai which we expect to be ready by the end of 2020." The Registration Statement further stated:

> ***The construction and operation of our own manufacturing plant in Shanghai or other manufacturing facilities are subject to regulatory approvals and may be subject to delays, cost overruns or may not produce expected benefits.***

> We are developing our own manufacturing facility in Shanghai which we expect to be ready by the end of 2020. Such manufacturing facility is currently being constructed by relevant Shanghai authorities. As a result, such construction is largely outside of our control and could experience delays or other difficulties. We are also building phase two of our manufacturing facilities in Nanjing. Construction projects of this scale are subject to risks and will require significant capital. Any failure to complete these projects on schedule and within budget could adversely impact our financial condition, production capacity and results of operations. Under PRC law, construction projects are subject to broad and strict government supervision and approval procedures, including but not limited to project approvals and filings, construction land and project planning approvals, environment protection approvals, the pollution discharge permits, work safety approvals, fire protection approvals, and the completion of inspection and acceptance by relevant authorities. Some of the construction projects being carried out by us are undergoing necessary approval procedures as required by law. As a result, the relevant entities operating such construction projects may be subject to administrative uncertainty construction projects in question within a specified time frame, fines or the suspension of use of such projects. Any of the foregoing could have a material adverse impact on our operations.
>
> Furthermore, we expect that the construction of our own vehicle manufacturing facility in Shanghai will facilitate our ability to obtain our own EV manufacturing license and potentially benefit from the NEV credit score system in the future. There can be no assurance that the completion of such factory will ensure that we will be able to obtain such license. In addition, to the extent we are unable to successfully complete construction on time or at all, our ability to obtain our own EV manufacturing license and potentially benefit from the NEV credit score system could be adversely affected, which in turn could impact our growth prospects.

50.     Under "Competitive Strengths," the Registration Statement touted an "active online community," stating in relevant part:

> ***User enterprise advocating a unique and holistic mobility lifestyle***
>
> Our "One-click for Service" and "One-click for Power" solutions through a subscription model offer a wide variety of value-added services including 24-hour customer service, technical support advisors, valet charging, car pick-up/drop-off delivery as well as more traditional services such as repair and maintenance and courtesy car. We believe these service offerings provide one-touch convenience and create a seamless experience for our users throughout the vehicle lifecycle. We directly sell our vehicles to users, which we believe allows us to deliver a more consistent, differentiated and compelling user experience, compared to the traditional franchised distribution model used by our competitors in China. We believe that our online and offline direct sales model is more cost efficient by cutting out franchised distribution costs as well as lowering the

> number of physical locations required and also allows us to expand our sales network effectively and efficiently in China.
>
> We are building an integrated online and offline community, creating, we believe, a unique and interactive mobility lifestyle where users can interact to provide an experience that goes beyond the car. ***Our mobile application, featuring moment sharing and an online fan shop, has become an active online community. Our mobile application had over 520,000 registered users as of August 28, 2018.*** We believe that our NIO Houses will help to cultivate brand loyalty and promote user engagement, serving as an exclusive user club with multiple social functions. Furthermore, our annual NIO Day with new product launches increases our media exposure and attracts prospective users. On 2017 NIO Day, there were 110 million views and we observed over 7,000 media articles covering the NIO Day which we believe makes it one of the largest electric vehicle launches.

(Emphasis added.)

51. The Registration Statement was materially false and misleading and omitted to state: (1) that the Company would not build its own manufacturing plant; (2) that, instead, the Company would rely on JAC Auto, a manufacturer owned by the Chinese government; (3) that reductions in government subsidies for electric cars would materially impact the Company's sales; (4) that the number of registered users of the Company's mobile application did not reflect the active user base; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Subsequent Disclosures

52. On March 5, 2019, after the market closed, the Company announced its fourth quarter 2018 financial results, disclosing that the Company would terminate its agreement with the Shanghai government to build its own manufacturing plant and would instead continue to contract with JAC Auto. The Company also stated that electric vehicle deliveries fell from more than 3,000 vehicles in December 2018 to 1,805 vehicles in January 2019, and fell further to 811 vehicles in February 2019; the slowdown was primarily caused by anticipation of subsidy reductions for electric vehicles in China in 2019.

53. On this news, the Company's share price fell $3.07, or over 30%, over the next

two trading days to close at $7.09 per share on March 7, 2019, on unusually heavy trading volume.

54. On April 2, 2019, the Company filed its annual report on Form 20-F with the SEC for the period ended December 31, 2018, in which it stated: "We aim to engage with users and create an environment conducive for user interaction both online and offline. Our mobile application had over 760,000 registered users as of December 31, 2018 and over 190,000 daily active users on peak days in 2018."

55. On May 9, 2019, the Company's share price closed at $4.60 per share, which was a decline of $1.66, or approximately 27%, from the IPO price of $6.26.

## FIRST CLAIM
### Violation of Section 11 of the Securities Act
### (Against All Defendants)

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

57. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

58. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59. NIO is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

60. As issuer of the shares, NIO is strictly liable to Plaintiff and the Class for the misstatements and omissions.

61. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

62. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

63. Plaintiff acquired NIO shares pursuant and/or traceable to the Registration Statement for the IPO.

64. Plaintiff and the Class have sustained damages. The value of NIO ADSs has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### (Against the Securities Act Individual Defendants)

65. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

66. This count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act.

67. The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of NIO within the meaning of Section 15 of the Securities Act. The Securities Act Individual Defendants had the power and influence and exercised the same to cause NIO to engage in the acts described herein.

68. The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

69. By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      (d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 10, 2019

**GLANCY PRONGAY & MURRAY LLP**

By: s/ Lesley F. Portnoy
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10169
Telephone: (212)682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**

Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Babulal Tarapara*